THOMPSON, Judge.
Alachua County (County) appeals a final order of the Florida Department of Transportation (DOT) holding that Chapters 77-165 and 77 — 416, Laws of Florida, do not prohibit the use of the proceeds of State of Florida, Alachua County Road Bonds, payable from the 80% surplus gasoline tax, for primary road rights of way after July 1, 1977. We affirm.
In 1973 the Division of Bond Finance of the Department of General Services (Division of Bond Finance) issued $3,800,000 of Alachua County Road Bonds. In 1976 the Division of Bond Finance issued $4,000,000 of Alachua County Road Bonds, Series of 1975. Each of these bond issues was secured by a lease-purchase agreement entered into between the Division of Bond Finance and the DOT, pledging as rentals for the payment of the bonds the 80% surplus gasoline taxes accruing to the DOT for use in the County. In addition to certain described construction projects, each of the bond issues provided for rights of way acquisition for primary and secondary roads throughout Alachua County. The County approved the bond project and the use of the 80% surplus gasoline tax to pay the principal and interest on the bonds. In 1977 the legislature enacted Chapters 77-165 and 77 — 416, Laws of Florida, substantially reorganizing the Florida road system and the responsibility for its construction. The law purported to transfer administrative control over the 80% surplus gasoline taxes from the DOT to the counties. This was in addition to the control the counties already had over the 20% surplus gasoline tax. It also placed the responsibility for the acquisition of rights of way for state roads, formerly called primary roads, with the DOT.
When each bond issue was sold, after deducting the cost of issuance by the Division of Bond Finance and the deposit with the State Board of Administration of the accrued interest and reserve required by the Bond Resolution, the balance of the bond proceeds was deposited in a project construction trust fund account of the DOT. These proceeds could be used by the DOT only for the projects described in the Bond Resolution.
A change in the law prohibiting the use of the 80% surplus gasoline tax for the acquisition of rights of way for state roads, or changing the responsibility for the management of the “Second Gas Tax” from the DOT to the county has absolutely no effect on the pledge of the “Second Gas Tax” or any portion thereof, as rentals for projects already authorized or on the expenditure of the project construction trust fund for projects described in the resolution authorizing the issuance of the bonds. If the legislature had provided that the 80% surplus gas taxes accruing to a county could not be used for a construction project in that county but must be used for the acquisition of rights of way only, this would not prohibit the use of the construction trust funds for the construction of projects described in the bond issues. On the contrary, the bond proceeds in the construction trust *711 fund can only be used for projects described in the bond issues. Legislation affecting the use or administration of the 80% surplus gas tax has no effect on the prior pledge of this tax as rentals or on the use of the construction trust funds of bond issues pledging the 80% surplus gas tax.
By its own terms, the lease purchase agreement is not subject to revocation or termination. The court in its final judgment of validation in each of the bond issues found that this was a valid covenant and that the parties to the lease purchase agreement had the authority to agree that it would not be subject to revocation or termination during the term thereof. The county cannot effectively revoke or terminate any of the agreements or approvals that it made in connection with this agreement.
The county contends that the bond proceeds cannot be used for acquisition of primary roads as there are no more primary roads since the 1977 amendment which renamed them state roads. This argument is without merit. A mere change in the name of a street or a highway number in a described project has no effect whatsoever on the right to construct that project. Additionally, the mere change in terminology from “primary roads” to “state roads” also has no effect.
The DOT had a right to spend bond proceeds in the construction trust funds of these two bond issues for primary road rights of way after July 1, 1977, without further approval or consent of the county. Furthermore, the DOT is under no obligation to reimburse the county for any construction trust funds spent for the acquisition of primary road rights of way after July 1, 1977.
AFFIRMED.
ERVIN and BOOTH, JJ., concur.